UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

        – against –

ALBERT D. NASSAR, individually and as trustee
of The Nassar Family Irrevocable Trust, THE
NASSAR FAMILY IRREVOCABLE TRUST, as
nominee for Albert D. Nassar, ALBERT C.
NASSAR, ALYCE C. NASSAR, and JOHN DOES
1-10,

                              Defendants.

**OPINION AND ORDER**

13 Civ. 8174 (ER)

RAMOS, D.J.:

### I.    Background

        The United States of America ("Plaintiff" or the "Government") brought the instant

action to collect the tax liabilities of Albert D. Nassar ("Defendant") and enforce tax liens on an

apartment owned by defendant the Nassar Family Irrevocable Trust ("the Trust").  Compl. ¶ 1,

Doc. 1 ("Compl.").  According to the Government, the apartment is subject to foreclosure on two

independent grounds:  (1) the Trust holds it as Defendant's nominee; and (2) the transfer of the

apartment to the Trust was a fraudulent conveyance under New York law.  Compl. ¶¶ 20, 34.

Defendant moves to dismiss the Government's claims pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure and seeks dismissal on the ground that the IRS released the lien against

the Trust.  Def.'s Mem. L. Support Mot. Dismiss, Doc. 15 ("Def.'s Mot. Dismiss").  For the

reasons set forth below, Defendant's motion to dismiss is DENIED.

### A. Factual Background[1]

Beginning in 2003, the Internal Revenue Service ("IRS") made assessments against Defendant for unpaid federal taxes and certain statutory additions with respect to tax years 2002 and 2009.  Compl. ¶¶ 11-13, 17.  As of October 25, 2013, Defendant's tax liability totaled $2,524,229.88.  *Id.* at ¶ 11.  According to the Complaint, the IRS has been unable to identify any assets held in Defendant's name.  *Id.* at ¶ 31.

In July 2001, the Nassar Family Irrevocable Trust ("the Trust") was created with Defendant appointed as its trustee.  *Id.* at ¶ 6.  The Defendant, along with his two children and co-defendants (Albert C. and Alyce C. Nassar), are its designated beneficiaries.  *Id.*  The Trust grants Defendant "sole and absolute discretion to make distributions to the beneficiaries for their health, support, and maintenance."  *Id.*  It is claimed that Defendant has used the Trust's funds to cover his personal business expenses, "repeatedly transfer[ing] moneys between the Trust and various business entities he owns and/or controls."  *Id.* at ¶ 30.  Meanwhile, Defendant has allegedly failed to render even an annual accounting of disbursements and receipts as he is required to by the Trust agreement.  *Id.*

On July 30, 2001, shortly after the Trust was created, Defendant purchased an apartment for $1,337,088 with a $725,000 mortgage loan, both of which were secured in his name.  *Id.* at ¶ 21.  The current fair market value of the apartment purportedly exceeds $2 million.  *Id.* at ¶ 31.  Less than three months later, on October 15, 2001, Defendant transferred the apartment to the Trust for $10.00 in consideration.[2]  *Id.* at ¶ 22.  Nonetheless, the conveyance was not recorded

---

[1] For the purposes of the instant motion, the Court assumes the allegations in Plaintiff's Complaint to be true and relies on information contained therein except where otherwise specifically noted.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

[2] It is also claimed that the Mercedes that Defendant drives is owned by the Trust.  Compl. ¶ 30.

until January 17, 2002.  *Id*.  The Government claims that Defendant "personally paid off the mortgage in full in March 2002."  *Id.*  Prior to this transfer, Defendant also purportedly quitclaimed multiple properties to an entity he owned and controlled.  *Id*. at ¶ 25.

The transfer of the apartment to the newly-created Trust allegedly took place during a time at which Defendant was facing "significant financial liabilities."  *Id*. at ¶¶ 23, 34. According to the Government, Defendant was aware that he faced civil and criminal liability in connection with a conspiracy to sell stolen drugs, which he later pleaded guilty to in addition to criminal contempt.  *Id*.  The Government also claims that, because Defendant and his wife had recently separated, he could foresee the need to pay substantial child support and alimony.  *Id*. at ¶ 24.  It is further alleged that Defendant anticipated incurring significant tax liabilities shortly thereafter.  *Id*.

Although Defendant's children are also beneficiaries of the Trust, the Government contends that neither have ever resided in the apartment.  *Id*. at ¶ 27.  After Defendant's separation from their mother, the two children resided with her in Florida.  *Id*.  Albert C. Nassar is now enrolled at Syracuse University and Alyce C. Nassar attends graduate school in Florida. *Id*.  Defendant, on the other hand, is alleged to have "continued to reside in, use, enjoy and control the Apartment as if it were his own" without ever paying rent to the Trust.  *Id*. at ¶¶ 26, 28.  Defendant pays for the maintenance, utility bills, property taxes, and homeowner's insurance for the apartment with funds held by what the Government claims is a shell company controlled and owned by Defendant.  *Id*. at ¶ 29.

These alleged facts lead the Government to claim that "[t]he Trust holds only nominal title to the Apartment and serves as Mr. Nassar's nominee" and the transfer of the apartment

should be set aside as fraudulent under New York Debtor and Creditor Law ("NYDCL") § 276. *Id*. at ¶¶ 20, 36.

### B. Procedural Background

On August 17, 2007, the Internal Revenue Service ("IRS") filed a Notice of Federal Tax Lien ("NFTL") in New York County against Defendant for the tax liability he incurred during the 2002 tax year ("TY") under 26 U.S.C. § 6323(f)(1)(A), (f)(2) and N.Y. Lien Law § 240(1). *Id*. at ¶ 14; *see also* Pl.'s Opp. Motion Dismiss 5 n.2, Doc. 16. [3]  A second lien was similarly filed on March 12, 2013 for the amount due for TY 2009.  *Id*.  Finally, on June 12, 2013, the IRS filed a lien against the Nassar Family Irrevocable Trust for both years.  *Id*.

Defendant filed a separate wrongful levy action on August 14, 2013 against the United States and the IRS seeking a permanent injunction that would prevent the IRS from seizing his interest in the apartment and from retaining money seized from his bank accounts.  *Nassar Family Irrevocable Trust et al. v. Shulman et al.*, 13 Civ. 5680 (ER) (KNF), Doc. 1.  This Court heard oral argument and denied the Defendant's preliminary injunction motion on October 23, 2013.  *Id*., Doc. 23.  The Government filed the present action on November 15, 2013, *see* Compl., and on March 5, 2014, the Court ordered it be consolidated with the Defendant's wrongful levy suit under Rule 42(a) of the Federal Rules of Civil Procedure.  Doc. 10.

## II.   Discussion

### A.  12(b)(6) Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable

---

[3] The Plaintiff's opposition papers indicate that the NFTL dates alleged in the Complaint were incorrect.  Pl.'s Opp. Mot. Dismiss 5 n.2.  Therefore, the Court relies on the updated information provided in the more recent papers.  The actual dates the NFTL were filed are irrelevant to the Court's analysis.

inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir.1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims.  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

When a party presents matters outside of the pleadings in response to a 12(b)(6) motion, a district court is faced with two alternatives:  it "may exclude the additional material and decide

the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (vacating and remanding judgment where district court appeared to consider plaintiff's affidavit in disposing of a Rule 12(b)(6)). In connection with his motion to dismiss, counsel for the Defendant submitted a declaration by Defendant, along with another by the attorney who assisted in the creation of the Trust. Doc. 17. Both declarations present factual matters outside of the pleadings concerning, among other matters, the formation and conditions of the Trust, Defendant's financial obligations, and the transfer of title from Defendant to the Trust. *Id.* In response to Plaintiff's objection to the declarations, Defendant asked the Court to treat this motion as one for summary judgment. Doc. 20. The Court denied Defendant's request. Doc. 23. Therefore, the Court will exclude the declarations submitted by Defendant from its consideration of the present motion to dismiss. *See CP III Rincon Towers, Inc. v. Cohen*, No. 10 CIV. 4638 (DAB), 2011 WL 651434, at *1 (S.D.N.Y. Feb. 16, 2011) ("Because the Court declines to convert Defendant's Rule 12(b)(6) Motion into a motion for summary judgment . . . the Declarations . . . are excluded from consideration for purposes of the motion to dismiss[.]).

In addition to confining its consideration of a Rule 12(b)(6) motion to the facts stated in the complaint and in documents appended or incorporated by reference, a court may also take into account matters of which judicial notice can be taken. *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)); *see also* Fed. R. Evid. 201. In order for a court to take judicial notice of a public document on a dismissal motion, the plaintiff must have relied on the terms and effect of the document in drafting the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d

Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Accordingly, it is routine for courts to take judicial notice of court documents, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Defendant asks the Court to consider a Final Judgment of Dissolution of Marriage issued by a local Florida circuit court in 2003 with respect to Defendant and his former wife to support his argument that he could not have foreseen the need to pay child support or alimony in 2001.  Doc. 17; *see also* Def.'s Reply Mem. Mot. Dismiss 10, Doc. 21 ("Def.'s Reply").  However, Plaintiff's Complaint neither relies on the terms of the marriage dissolution judgment, nor does it contradict it.  The Complaint merely states that, at the time the apartment was transferred to the Trust, Defendant had recently separated from his estranged wife and anticipated potential future alimony and child support payments.  Compl. ¶ 24.  This allegation is entirely consistent with the information contained in the marriage dissolution judgment.  Thus, the Court will not consider the judgment for the purposes of the instant motion.

### B.  Nominee Theory

The Internal Revenue Code states that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  In enacting the statute, "Congress meant to reach every interest in property that a taxpayer might have."  *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). "It is well settled that the IRS may properly levy the property of a corporation that is the nominee or alter ego of a taxpayer to satisfy the taxpayer's tax liability."  *Magesty Sec. Corp. v. U.S. I.R.S.*, No. 10 CIV. 0638 (ALC), 2012 WL 1425100, at *5 (S.D.N.Y. Apr. 24, 2012) (citations omitted).

The analysis contained in Defendant's submissions conflates the nominee and alter ego theories.[4]  Def.'s Mot. Dismiss, 10-14; *see also* Def.'s Reply 2-8.  The Government exclusively invokes the nominee doctrine in its Complaint, arguing that "the Trust holds only nominal title to the Apartment and serves as Mr. Nassar's nominee."  Compl. ¶ 20.  Since the Government does not raise the alter ego theory in its Complaint, the Court will only assess the nominee doctrine in its consideration of the present Rule 12(b)(6) motion.

"Under the nominee doctrine, an owner of property may be considered a mere 'nominee' and thus may be considered to hold only bare legal title to the property."  *United States v. Snyder*, 233 F. Supp. 2d 293, 296 (D. Conn. 2002).  Alternatively, the alter ego, or "piercing the corporate veil" doctrine, "arose from the law of corporations and allows a creditor to disregard the corporate form . . . either by using an owner's assets to satisfy a corporation's debt or by using the corporation's assets to satisfy the individual's debt."  *United States v. Evseroff*, No. 00-CV-06029 (KAM), 2012 WL 1514860, at *13 (E.D.N.Y. Apr. 30, 2012) *aff'd*, 528 F. App'x 75 (2d Cir. 2013) (citing *State v. Easton*, 169 Misc. 2d 282, 647 N.Y.S. 2d 904, 908-09 (N.Y. Sup. Ct. Albany Cnty. 1995)).  The "critical issue" in both the nominee and alter ego analyses is "not motive, but control, and whether the defendant used this control to commit a fraud or other wrong resulting in an unjust loss or injury to the plaintiff."  *United States v. Evseroff*, 270 F. App'x 75, 77 (2d Cir. 2008) (citing *In re Vebeliunas*, 332 F.3d 85, 91-92 (2d Cir. 2003)).  Nonetheless, the two theories are substantively different.  A nominee finding does not require intent to defraud creditors or hinder collection efforts.  *Evseroff*, 2012 WL 1514860, at *10 (citing *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999)).  Furthermore, while the alter ego

---

[4] The case law on the subject also often fails to distinguish which theory is being used. *See e.g.*, *United States v. Letscher*, 83 F. Supp. 2d 367 (S.D.N.Y. 1999); *United States v. Cohn*, 682 F. Supp. 209, 215 (S.D.N.Y. 1988).

analysis is concerned with the taxpayer's control over a property-holding entity, the nominee theory emphasizes the taxpayer's control over and benefit from the property itself. *Id.* (citations omitted). In discerning whether a nominee relationship exists, the question is "whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." *Id.* at *9 (quoting *In re Richards*, 231 B.R. at 578).

In determining whether a taxpayer holds a piece of property as a nominee, many federal courts apply a six-factor test, which involves determining:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retains possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Evseroff,* 2012 WL 1514860, at *10 (quoting *Giardino v. United States*, No. 96-CV-6348T, 1997 WL 1038197, at *2 (W.D.N.Y. Oct. 29, 1997)); *see also First Corporate Sedans, Inc. v. United States*, No. 94 CIV. 7642 (DC), 1996 WL 145958, at *4 (S.D.N.Y. Apr. 1, 1996) (invoking the six-factor test in denying taxpayer's request for a preliminary injunction to prevent government from levying assets based on the nominee theory). A court should "avoid an over-rigid preoccupation with questions of structure, and apply the preexisting and overarching principle that liability is imposed to reach an equitable result." *Magesty Sec. Corp.*, 2012 WL 1425100, at *4 (quoting *Libutti v. United States*, 107 F.3d 110, 119 (2d Cir.1997)). The inquiry should be aimed at determining whether the taxpayer "exercised active or substantial control over the property." *Evseroff*, 2012 WL 1514860, at *10 (quoting *In re Richards*, 231 B.R. at 579). Accordingly, courts evaluate the totality of the circumstances; "no single factor is dispositive."

*Fourth Inv. LP v. United States*, 720 F.3d 1058, 1070 (9th Cir. 2013) (citing *Dalton v. C.I.R.*, 682 F.3d 149, 158 (1st Cir. 2012)).

The Government has alleged sufficient facts to satisfy the six-factor test. First, it points out that Defendant transferred the apartment to the Trust for a mere ten dollars only months after having paid in excess of $1.3 million for it. Compl. ¶¶ 21-22. Second, the Complaint presents several facts that support the inference that the transfer took place during a time at which Defendant anticipated facing significant civil and criminal liability.[5] *Id.* at ¶¶ 23-24. According to the Government, in 2000, a pharmaceutical company filed a civil suit against Defendant claiming he had illegally bought and re-sold a prescription drug. *Id.* at ¶ 23. In 2001, Defendant was enjoined from purchasing, distributing, or selling the drug. *Id.* Defendant subsequently pleaded guilty to federal charges of conspiracy to sell stolen drugs and criminal contempt. *Id.* The Government also asserts that, at the time of the transfer, Defendant had recently separated from his wife and was aware that he would soon have to pay alimony and child support.[6] *Id.* at ¶ 24. Third, the fact that Defendant is both a beneficiary and trustee of the Trust is indicative of a close relationship between Defendant and the alleged nominee. *See Id.* at ¶ 6. The fourth factor is less damaging for Defendant. Although the parties did not initially record the transfer, it was ultimately recorded approximately three months later. *Id.* at ¶ 22.

---

[5] Defendant rightfully points out that the transfer of the apartment happened before he incurred any tax liability. *See* Compl. ¶ 12; *see also* Def.'s Mot. Dismiss 9, 13; Def.'s Reply 6. However, the fact that Defendant was not necessarily facing tax liability at the time the transfer of the apartment occurred does not negate the evidentiary significance of Defendant's other anticipated civil and criminal liabilities. *See Berkshire Bank v. Town of Ludlow, Mass.*, 708 F.3d 249, 253 n.5 (1st Cir. 2013) (the transfer of title prior to tax assessment solely to avoid legal liability 'in case somebody got hurt on the property' weighed in favor of nominee finding).

[6] Defendant argues that he did not owe any alimony or child support at the time he transferred the apartment to the Trust. Def.'s Reply 6-7. However, it was reasonable for Defendant to anticipate these types of liabilities if he had recently separated from his wife, as the Complaint alleges. *See* Compl. ¶ 24.

10

The fifth and the sixth factors weigh the most strongly in the Government's favor.  The Complaint states that Defendant has resided in, and otherwise used, enjoyed, and controlled the apartment as if it were his own since he transferred it to the Trust.  *Id.* at ¶ 26.  The Government contends that neither of Defendant's children have ever lived in the apartment and that Defendant occupied it alone for several years, up until his girlfriend moved in.  *Id.* at ¶ 27.  His son and daughter purportedly lived with their mother following their parents' separation and are currently students in Syracuse and Florida, respectively.  *Id.* at ¶ 27.  Defendant has allegedly never paid rent, although the Government claims he indirectly covers the maintenance, utilities, property taxes, and homeowners insurance through his "shell company."  *Id.* at ¶¶ 28-29.   In *Evseroff*, the taxpayer similarly retained possession of his residence after transferring its title to a trust.  *Evseroff*, 2012 WL 1514860, at *11.  Although the taxpayer did not pay rent, he did pay the mortgage and other expenses that were necessary to operate and maintain the property as Defendant has in this case.  *Id.*  The court found that "payment of upkeep costs for a property has been specifically identified as a factor favoring a nominee finding."  *Id.*  Likewise, this Court concludes based on the facts stated in the Complaint that "the inference that the Trust was merely his nominee is a strong one."  *See id*.

Ultimately, "state law controls in determining the nature of the legal interest which the taxpayer had in the property."  *Nat'l Bank of Commerce*, 472 U.S. at 722 (internal quotation marks and citations omitted).  The corresponding tax consequences are prescribed by federal law.  *See id*.  However, New York courts do not appear to recognize the nominee theory of ownership.  The Government has not proffered any authority for the proposition, nor is the Court

aware of any. [7]  Thus, this Court is put in a position in which it must attempt to predict how the New York Court of Appeals would rule on the matter.  *In re Vebeliunas*, 332 F.3d at 90.  Where a state's highest court has not spoken on an issue, federal courts must give "proper regard to the relevant rulings of a state's lower courts" and may "consider decisions in other jurisdictions on the same or analogous issues."  *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir.) *certified question accepted sub nom. Thelen LLP. v. Seyfarth Shaw LLP*, 22 N.Y.3d 1017, 981 N.Y.S.2d 349 (2013) *and certified question answered*, 24 N.Y.3d 16 (2014).  Although the application of the six-factor test could be determinative in this case, the Court need not attempt to predict whether New York state courts would apply this test—which enjoys "almost universal" consensus among federal courts that have applied the nominee theory.  *See Fourth Inv. LP*, 720 F.3d at 1069 (looking to federal decisional law to supply standards for nominee analysis) (quoting *Dalton*, 682 F.3d at 158).  The motion to dismiss is properly denied because the Complaint adequately alleges a fraudulent conveyance claim for the reasons stated below.

**C. Fraudulent Conveyance Theory**

Under New York law, "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  N.Y. Debt. & Cred. Law § 276.  Unlike NYDCL § 273, which creates constructive fraud by virtue of the lack

---

[7] A separate line of opinions grounds its joint analysis of both the nominee and alter ego theories in New York case law that suggests that a court may "disregard the corporate form whenever necessary to prevent a fraud or to achieve equity." *Cohn*, 682 F. Supp. at 216 (citing *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417, 223 N.E.2d 6, 7 (1966)); *see also Magesty Sec. Corp.*, 2012 WL 1425100, at *4.  Accordingly, rather than piercing the corporate veil, the courts in these cases invoke their "equitable power to disregard the formality of legal title to the property in order to achieve a just result." *Id*.  Under this framework, the Government need only allege facts that show, under New York law, that the taxpayer possesses an ownership interest in the subject property.  *Id*.  Although the six-factor test is not applied, many of the same indicia are cited.  *See Magesty Sec. Corp.*, 2012 WL 1425100, at *4-5 (assessing the amount of consideration, anticipation of liability, and retention of control and possession).

of fair consideration, NYDCL § 276 "focuses on the 'actual intent' of the transacting parties." *United States v. McCombs*, 30 F.3d 310, 327 (2d Cir. 1994). If actual intent to defraud creditors is proven, "the conveyance will be set aside regardless of the adequacy of consideration given." *Id.* at 328. As the language of the statute suggests, fraudulent intent can be found where the debtor either specifically intends to "defraud" a creditor or simply "hinder or delay" collection efforts. *Evseroff*, 2014 WL 202563, at *5.

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." Accordingly, a claim under NYDCL § 276 must be pled with particularity as required by Rule 9(b) because it demands proof of actual intent to defraud. *See Scantek Med., Inc. v. Sabella*, 583 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)). The particularity requirement may be met "by alleging 'the time, place, particular individuals involved, and specific conduct at issue.'" *Topever Corp. v. ENE Grp. LLC*, No. 12 CV 869 (HB), 2013 WL 822378, at *2 (S.D.N.Y. Mar. 6, 2013) (quoting *Luce v. Edelstein*, 802 F.2d 49, 54-55 (2d Cir. 1986)). The Government clearly states that the alleged fraud consisted of Defendant transferring the apartment to a newly-created family trust by deed in 2001 in exchange for ten dollars in consideration. *See* Compl. ¶ 6, 22-23, 34.

Furthermore, Rule 9(b)'s requisite "strong inference" of fraud may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Due to the recognized difficulty of proving actual intent to hinder, delay, or defraud creditors under the NYDCL, "the pleader is allowed to rely on 'badges of fraud[,]' . . . circumstances so commonly

13

associated with fraudulent transfers 'that their presence gives rise to an inference of intent[.]]"

*Wall St. Associates v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (App. Div. 1999)

(quoting *Pen Pak Corp. v. LaSalle Nat. Bank of Chicago*, 240 A.D.2d 384, 386, 658 N.Y.S.2d

407, 408 (App. Div. 1997)).   Thus, fraudulent intent may be inferred from the circumstances

surrounding the transfer.  *Steinberg v. Levine*, 6 A.D.3d 620, 621, 774 N.Y.S.2d 810 (App. Div.

2004).   The series of factors referred to as "badges of fraud" include:

> [1] lack or inadequacy of consideration, [2] family, friendship, or close associate relationship between transferor and transferee, [3] the debtor's retention of possession, benefit, or use of the property in question, [4] the existence of a pattern or series of transactions or course of conduct after the incurring of debt, and [5] the transferor's knowledge of the creditor's claim and the inability to pay it.

*Id.*  The Government will ultimately bear the burden of proving actual intent to defraud by clear

and convincing evidence.  *McCombs*, 30 F.3d at 328 (citation omitted); *see also Marine Midland

Bank v. Murkoff*, 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20 (App. Div. 1986).

The badges of fraud closely parallel the six-factor test discussed in the nominee status

analysis above, as does the Court's corresponding assessment.[8]  First, the ten dollars of

consideration allegedly provided by the Trust in exchange for the $1,337,088 apartment is

plainly disproportional, if not entirely inadequate.[9]  Compl. ¶¶ 21-22.  The meager consideration

---

[8] One court attempted to distinguish the two principles, explaining that a fraudulent conveyance concerns "the validity of the trust at the time it was created and its continued viability as a separate legal entity."  *In re Richards*, 231 B.R. at 579.  In contrast, the nominee theory addresses the manner in which the transferee viewed and treated the property thereafter.  *Id.*

[9] Defendant argues that "no practical reason exists . . . to require a trust settlor to pay into the trust money in an amount equal to fair market value."  Def's Mot. Dismiss 16.  Defendant's reasoning is misguided.  The practical reason for at least inquiring into the adequacy of consideration is to assure a debtor is not freely transferring substantial assets to a family trust for little to no consideration and effectively sheltering his property from creditors. *See HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 (2d Cir. 1995) (in a NYDCL § 273(a) case, Debtor could not "empty his estate with impunity when sued by his victims, transfer his property to his fiancée and receive nothing but inchoate interests in return . . . and yet enjoy the benefits of the property now nominally owned by his wife").

amount provided by the Trust is also relevant because it arguably deepened Defendant's future

insolvency, with the Government now claiming that it cannot identify any assets held in

Defendant's name that can be levied to satisfy his tax liability. *Id*. at ¶ 31. In any event,

although it does not appear to be the case here, "a cause of action under § 276 'may lie even

where fair consideration was paid and where the debtor remains solvent.'" *Pashaian v.*

*Eccelston Properties*, Ltd., 88 F.3d 77, 86 (2d Cir. 1996) (quoting *Grumman Aerospace Corp. v.*

*Rice*, 199 A.D.2d 365, 366, 605 N.Y.S.2d 305, 307 (App. Div. 1993)). Turning to the second

factor, Defendant had a close relationship with the transferee of the apartment due to his role as a

trustee and beneficiary of the Trust. *Id.* at ¶ 6. Third, the Government adequately alleges that

Defendant has maintained possession and use of the apartment, having purportedly continued to

reside in it since the transfer took place over a decade ago. *Id*. at ¶ 26-27.

The presence of the fifth and sixth "badges of fraud" is more uncertain based on the

information contained in the Complaint. The Government contends that Defendant quitclaimed

several of his properties in Florida to Global Dealmaker, LP, an entity owned and operated by

him. *Id*. at ¶ 25. It is certainly possible that this alleged fact could pertain to a pattern of conduct

indicative of Defendant's intent to impair, hinder, or delay collection of his tax debts. However,

the Complaint simply notes that the transactions took place at some indeterminate time prior to

the transfer of the apartment, without specifying whether they occurred after Defendant incurred

any debt. *Id.* Therefore, the Court is unable to discern how or if the quitclaim actions in Florida

relate to the transfer of the apartment to the Trust. Finally, the Complaint does not allege that

Defendant was aware of his inability to cover the liabilities he was facing. While it does assert

that Defendant was attempting to "reduce the assets that would be available to the IRS to satisfy

his anticipated tax liability . . . and to other future creditors," the Complaint is otherwise silent as to Defendant's state of mind.  *See id.* at ¶ 23-24.

Ultimately, the Government pleads sufficient facts to allow the Court to reasonably infer that Defendant possessed actual intent "to hinder, delay, or defraud either present or future creditors" for the purposes of this Rule 12(b)(6) motion.  *See* N.Y. Debt. & Cred. Law § 276. Several badges of fraud are sufficiently alleged in the Complaint.  *See In re Saba Enterprises, Inc.*, 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009) (the presence of several badges of fraud constitutes "clear and convincing evidence of actual intent") (citation omitted). New York courts have observed that the "plain language" of NYDCL § 276 "reaches conveyances intended to defraud *future* creditors, including conveyances which occurred *prior* to the time the obligation to the plaintiff arose."  *JR & J Holding Co. v. Rabinowitz*, 201 A.D.2d 535, 536, 607 N.Y.S.2d 724, 725 (App. Div. 1994) (emphasis added).  "[I]t is sufficient if such fraudulent intent existed either specifically or generally with respect to the subsequent creditor or creditor."  *Bein v. Baer*, 7 Misc. 2d 543, 544, 162 N.Y.S.2d 676, 677-78 (Sup. Ct. 1957).  While the Complaint's factual matter does not precisely conform to the "badges of fraud," "[f]raudulent acts are as varied as the fish in the sea."  *In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir. 1983).  The Government has adequately plead that Defendant possessed, at the very least, general intent to defraud his subsequent creditors.  Therefore, Defendant's motion to dismiss must be denied.[10]

---

[10] Defendant also argues that NYDCL § 276 is "inapplicable."  Def.'s Mot. Dismiss 14.  Defendant cites New York Civil Practice Law Rule ("CPLR") § 5205(c), which exempts money in certain trusts from the "application to the satisfaction of a money judgment."  *See* Def.'s Mot. Dismiss 14.  Defendant's reliance on CPLR § 5205(c) is inapposite because the statute further states that additions to a trust "shall *not* be exempt from application to the satisfaction of a money judgment if  . . . *deemed to be fraudulent conveyances*[.]"  N.Y. C.P.L.R. 5205(c)(5) (emphasis added).  The Government is indeed alleging that the transfer of the apartment to the Trust is a fraudulent conveyance.  Compl. at ¶ 33-36.  The mere fact that Defendant denies that a fraudulent conveyance took place does not render NYDCL § 276 inapplicable.

16

### D. Reinstatement of Tax Liens

Defendant also seeks dismissal of this action on the basis that the liens on the Trust were released when the IRS prepared, signed, and filed a Certificate of Release of Federal Tax Lien. Def.'s Mot. Dismiss 17.  The Government contends that the liens were erroneously released and immediately reinstated in accordance with statutory requirements once the mistake came to light. Pl.'s Opp. Motion Dismiss 15.

As an initial matter, the filing of a certificate of release does not extinguish the underlying tax liability.  *Boyer v. C.I.R.*, 86 T.C.M. (CCH) 615 (T.C. 2003); *see also* 26 U.S.C. § 6325 (a certificate of release "shall be conclusive that the lien referred to in such certificate is extinguished").  "The underlying tax liability remains until the tax is paid in full or the statutory period for collection expires."  *Id.*  Defendant has not alleged that either condition has occurred and therefore his underlying tax liability is not extinguished.  *See id.*  Furthermore, 26 U.S.C. § 6325(f)(2) allows the IRS to reinstate a lien if "the Secretary determines that a certificate of release . . . was issued erroneously[.]"  The Government confirms that is precisely what happened in the present case.   Upon realizing its mistake, "[t]he IRS filed revocations of the releases . . . as required by Section 6325(f)(2)."[11]  Pl.'s Opp. Mot. Dismiss 15-16.

Therefore, the release of the liens neither extinguished Defendant's tax liability nor the Government's ability to continue pursuing the present action.

---

[11] The Court takes judicial notice of the revocation filings, which are publicly available.  *See* Automated City Register Information System, https://a836-acris.nyc.gov/DS/DocumentSearch/PartyName (last visited: Nov. 5, 2014).  The Court "may take judicial notice of the contents of relevant public disclosure documents." *Kramer*, 937 F.2d at 774 (taking judicial notice of SEC filings); *see also* Fed. R. Evid. 201(b)(2).

## III.     Conclusion

For the reasons set forth above, Defendant's motion to dismiss is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 13.  Defendants are directed to answer the Complaint by December 1, 2014.


It is SO ORDERED.

Dated:     November 10, 2014
             New York, New York


Edgardo Ramos, U.S.D.J.

18